**MANFRED, APC**
Manfred P. Muecke
CA State Bar No. 222893
4225 Executive Square
Suite 600-6051
La Jolla, CA 92037
Telephone: (619) 550-4005
Facsimile: (619) 550-4006
mmuecke@manfredapc.com

ATTORNEYS FOR PLAINTIFFS

*Additional Counsel on Following Page*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Corinne Pearson and Sharon Manier, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Nike, Inc.,

Defendant.

**Case No. 3:26-cv-4167-CAB-DEB**

**CLASS ACTION**

**SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND OTHER EQUITABLE RELIEF**

**(1) California's Unfair Competition Laws ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.*;**
**(2) California's False Advertising Laws ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *et seq.*;**
**(3) California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750, *et seq.*;**
**(4) Unjust Enrichment**

**DEMAND FOR JURY TRIAL**

**NICHOLS KASTER, PLLP**
Anna P. Prakash, MN Bar No. 0351362*
aprakash@nka.com
Brock J. Specht, MN Bar No. 0388343*
bspecht@nka.com
Patricia C. Dana, MN Bar No. 0400803*
pdana@nka.com
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878

**DON BIVENS, PLLC**
Maxwell K. Weiss, AZ Bar No. 041264*
max@donbivens.com
Scottsdale Quarter
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: 602-762-2661

*admitted *pro hac vice*

## SUMMARY

1. Plaintiffs Corinne Pearson and Sharon Manier, on behalf of themselves and all other similarly situated consumers, bring this action against Defendant Nike, Inc. under California's Unfair Competition Laws ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.*; California's False Advertising Laws ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *et seq.*; and California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750, *et seq.* Plaintiffs also assert a claim for unjust enrichment in the alternative. As described herein, Defendant has violated California law by engaging in a false and misleading marketing, advertising, and pricing scheme. Plaintiffs bring this action to remedy this unlawful conduct and to obtain appropriate monetary and equitable relief on behalf of themselves and all other similarly situated consumers.

## INTRODUCTION

2. "One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison." 16 C.F.R. § 233.1.

3. Because consumers are susceptible to a bargain, retailers "have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). "Because such practices are misleading—and effective—the California legislature has prohibited them." *Id.*

4. This is a civil class action against Defendant Nike, Inc., (referred to herein as "Nike"), seeking monetary and injunctive relief for Nike's deceptive-

reference-price scheme in connection with online sales of its products on its company website, nike.com, and through its mobile app. As alleged herein, Nike fabricates promotions on products sold on its website and on its mobile app by advertising discounts from reference prices that are fictitious. Nike fraudulently induces consumers to purchase Nike's products based on false discounts or "savings" off the phantom reference prices.

5. The United States Supreme Court condemned such false reference price schemes nearly 90 years ago in *FTC v. Standard Education Soc.*, 302 U.S. 112 (1937).[1] The Federal Trade Commission also has made it clear that deceptive pricing schemes are illegal, *see* 16 C.F.R. § 233.1, and state attorneys general have civilly prosecuted such schemes for many years under their respective state consumer protection laws.

6. In particular, California law explicitly prohibits unfair or deceptive practices, such as making "false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." Cal. Civil Code § 1770(a)(13) (CLRA). In addition, California law requires that any published "former price" reflect the actual prevailing market price for the advertised item:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price … at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501 (FAL).

[1] *See also FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 387 (1965) ("It has long been considered a deceptive practice to state falsely that a product ordinarily sells for an inflated price but that it is being offered at a special reduced price, even if the offered price represents the actual value of the product and the purchaser is receiving his money's worth.").

7. Simply put, an item "on sale" in California must have been openly and actively offered for sale at the advertised "former price" within 90 days of the sale. *See id.*; 16 C.F.R. § 233.1(b); *Calcagno v. Kipling Apparel Corp.*, No. 23-CV-2247-BAS-BLM, 2024 WL 3261205, at *7 (S.D. Cal. July 1, 2024) ("Claims brought under Section 17501 are limited to either false claims of former prices or former prices that are stale for longer than three months."); *Orona v. Patagonia, Inc.*, No. 25-CV-0140-LL-AHG, 2026 WL 880159, at *5 (S.D. Cal. Mar. 31, 2026).

8. Notwithstanding these prohibitions, Nike engages in a widespread scheme of advertising deceptive reference prices on its website and on its mobile app. Numerous products available for sale on Nike's website and on its mobile app include a deceptive, slashed reference price, along with a purported "sale" price and a calculation of the purported discount as a percentage ("% off").

9. Nike routinely offers promotional discounts that purport to offer "extra" markdowns with the use of a code at checkout. These "extra" discounts provide an additional sense of urgency, incentivizing consumers to act quickly.

10. Through this scheme, consumers are deceived into believing that the advertised reference price is the regular, prevailing price at which Nike's goods are sold, and that a special discount is being offered that affords the consumer a substantial discount over the prevailing price for the item.

11. In reality, Nike's reference prices are fictitious. Nike's sales frequently last longer than 90 days. Because Nike products are "on sale" for more than 90 days, the advertised reference prices are stale and do not reflect the prevailing market prices of those products.

12. Nike's deceptive practices mislead consumers into believing they are receiving a good deal and induce consumers into purchasing Nike's products.

13. As a result of Nike's unlawful, unfair, fraudulent, misleading, and deceptive practices, Plaintiffs and members of the proposed Class purchased Nike's

products under the mistaken belief that they were receiving a discount from Nike's regular prices.

14. Plaintiffs and the Class members would not have made these purchases if they did not believe they were receiving the advertised bargains.

15. Absent Nike's false reference price scheme, Plaintiffs and other Class members would not have purchased Nike's products or would not have paid as much as they did for those products.

16. This lawsuit serves an important public interest because Nike's deceptive practices are widespread and directed to members of the public at large through general advertisements on Nike's website and on its mobile app, those deceptive practices are intended to deceive members of the public, and those deceptive practices have harmed the public and inhibited fair competition.

17. In furtherance of this public interest, and to remedy Nike's wrongful conduct, Plaintiffs bring this action as a class action and assert claims on behalf of themselves and the proposed Class for violations of the California's Unfair Competition Laws ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.*; California's False Advertising Laws ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *et seq.*; and California Consumer Legal Remedies Act ("LRA"), CAL. CIV. CODE §§ 1750, *et seq.* In addition, Plaintiffs assert a claim for unjust enrichment in the alternative. In connection with these claims, Plaintiffs seek monetary relief, injunctive relief, attorneys' fees and costs, and other appropriate relief as allowed by law or as appropriate in equity.

## **JURISDICTION AND VENUE**

18. This court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), as Plaintiffs (California) and Nike (Oregon) are diverse, there are over 100 class members, and the amount in controversy exceeds $5 million.

19. Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Corinne Pearson resides and was injured in this District, and a substantial part of the events or omissions giving rise to Ms. Pearson's claims occurred in this District.

20. This Court has personal jurisdiction over Nike because Nike has conducted and continues to conduct business in the State of California, and because Nike has committed the acts and omissions complained of herein in the State of California.

## THE PARTIES

### PLAINTIFF CORINNE PEARSON

21. Plaintiff Corinne Pearson is an individual citizen of the State of California. At all times mentioned herein, Ms. Pearson was and is a resident of La Mesa, California.

22. In reliance on Nike's advertised reference prices and discounts, Ms. Pearson purchased Nike products from Defendant via its mobile app on April 26, 2025.

23. If Ms. Pearson had known that the reference prices and advertised discounts were false, she would not have made this purchase.

24. Ms. Pearson would like to buy Defendant's products in the future. Ms. Pearson can no longer rely on the accuracy of the representations addressed below in deciding whether to purchase Nike's products, and, furthermore, cannot readily determine whether the misrepresentations have been corrected.

25. The allegations contained in this class action complaint are based on Ms. Pearson's personal knowledge of facts pertaining to herself and upon information and belief, including further investigation conducted by Plaintiffs' counsel, as to the

remainder.[2]

**PLAINTIFF SHARON MANIER**

26. Plaintiff Sharon Manier is an individual citizen of the State of California. At all times mentioned herein, Ms. Manier was and is a resident of Riverside, California.

27. In reliance on Nike's advertised reference prices and discounts, Ms. Manier purchased a Nike product from Defendant via its website on January 30, 2026.

28. If Ms. Manier had known that the reference price and advertised discount were false, she would not have made this purchase.

29. Ms. Manier would like to buy Defendant's products in the future. Ms. Manier can no longer rely on the accuracy of the representations addressed below in deciding whether to purchase Nike's products, and, furthermore, cannot readily determine whether the misrepresentations have been corrected.

30. The allegations contained in this class action complaint are based on Ms. Manier's personal knowledge of facts pertaining to herself and upon information and belief, including further investigation conducted by Plaintiffs' counsel, as to the remainder.[3]

**DEFENDANT NIKE, INC.**

31. Defendant Nike is an Oregon corporation with its principal office located

---

[2] Plaintiffs' counsel performed an investigation of Nike's online advertising practices using, among other things, the Internet Archive's Wayback Machine (available at www.archive.org) and screen captures from the nike.com website. Counsel's pre-suit investigation confirms that Nike's deceptive sales practices are widespread and persistent. Further investigation confirms that Nike's deceptive sales practices are uniform across the Nike App and the Nike website. Discovering Nike's deception required extensive mining of internet archives, which revealed that Nike's advertised reference prices and advertised discounts are false or misleading, and that Nike's purported discounts regularly exceed a three-month period.

[3] *See supra* note 2.

at One Bowerman Drive, Beaverton, Oregon, 97005.

32. Nike's 2026 Form 10-K reports that it is "the largest seller of athletic footwear and apparel in the world."[4]

33. Defendant Nike utilizes the website www.nike.com and its related webpages to market and sell athletic footwear, apparel, equipment, and accessories under the Nike, Jordan, and Converse brands directly to consumers throughout the United States, including to consumers in California.

34. Nike also utilizes a mobile app (the "Nike App") to market and sell its products directly to consumers who choose to download the Nike App on their mobile devices, including consumers in California.

35. The Nike website and Nike App are two ways for consumers to shop from the same online store.

36. Nike is registered to do business in California and intentionally avails itself of the markets in this state by promoting, marketing, and selling its products in California.

37. Nike systematically and continuously conducts business in California through its online store and its 44 Nike stores in California.[5]

38. Nike designs and implements the pricing schemes for products sold on its website, its mobile apps, and in its stores. Upon information and belief, the pricing schemes for products sold on Nike's website and the Nike App are uniform.

---

[4] Nike, Inc. Form 10-K (2026) at 1, available at https://www.sec.gov/Archives/edgar/data/320187/000032018726000088/nke-20260531.htm#i3352cfbb0b3b4c89899805d4ecacc4bf_13.

[5] Nike, Inc. Store Directory, California, available at https://www.nike.com/retail/directory/united-states/california.

## FACTUAL ALLEGATIONS

### I. DEFENDANT ENGAGED IN A DECEPTIVE REFERENCE PRICE SCHEME

39. Nike is the world's largest seller of athletic footwear and apparel in the world with global revenues exceeding $46 billion in fiscal year 2026.[6]

40. Nike sells its products via various channels, including digital sales channels. Nike's digital sales channels include its own mobile app (the Nike App) and e-commerce retail website: nike.com.

41. Similar to most modern-day e-commerce websites, nike.com allows customers to browse product specifications, prices, and discounts, add products to a shopping cart, and check out and make payments on the site. The Nike App allows consumers to complete these same tasks on their mobile devices.

42. The Nike website and the Nike App do not maintain separate product catalogs or separate pricing databases. Instead, both channels receive pricing information generated by the same underlying commerce platform and pricing services.

43. Nike has engaged in, and is continuing to engage in, a deceptive reference-price scheme on its website and mobile app. Consumers who shop on Nike's website and mobile app are presented with false discounts off fictitious reference prices.

44. This fraudulent reference price scheme is consistent across Nike's website and mobile app, is consistent across product lines, and is purposely employed by Nike to artificially inflate demand for its products—and inflate the sale price of its products—by leading consumers to believe they are saving money on purchases when, in fact, no bona fide savings are being offered.

---

[6] Nike, Inc. Form 10-K (2026) at 29, available at https://www.sec.gov/Archives/edgar/data/320187/000032018726000088/nke-20260531.htm#i3352cfbb0b3b4c89899805d4ecacc4bf_82.

45. Deceptive reference pricing is a strategy known to retailers, and it was broadly deployed post-pandemic "to drive sales and unload excess inventory as rising inflation and other economic concerns led consumers to pull back from making discretionary purchases."[7] Thus, Nike knew or should have known that its pricing scheme was false or misleading.

46. Nike intentionally induced consumers to buy its discounted products and profited from the success of its pricing scheme.

47. The details of Nike's deceptive pricing scheme are summarized below.

**A. Deceptive Reference Pricing**

48. The Nike Air Max 2017 (men's shoes) is an emblematic example of Nike's deceptive practices.

49. Between September 8, 2025, and March 14, 2026, Nike's website listed a reference price of $190 for the Nike Air Max 2017, implying that its prevailing market price was $190 at that time.

---

[7] See Patrick Coffee, *Thought You Saved $60 on That Vacuum Cleaner? Think Again*, WALL STREET JOURNAL (Aug. 24, 2023), available at https://www.wsj.com/articles/thought-you-saved-60-on-that-vacuum-cleaner-think-again-c89ce344?mod=author_content_page_3_pos_9.

50. When the Nike Air Max 2017 is "on sale," its advertised market price of $190 is crossed off and displayed in a light grey color. One example of the Nike Air Max 2017 product page while "on sale," taken October 23, 2025, is depicted below. To the left of the crossed-off reference price, consumers are shown a "sale" price in bold, black lettering: **$114.97**. To the right the crossed-off reference price, bold, green lettering reads "**39% off**."




51. Reasonable consumers would interpret Nike's website to mean that they could save $75 on their purchase—if they purchased Nike Air Max 2017's while it was "on sale." Not knowing how long the sale would last, consumers were given a false sense of urgency.

52. But pricing data for the black Nike Air Max 2017 indicates that it was "on sale" ***for six (6) months***. Pricing data collected for black Nike Air Max 2017's from screenshots taken on 176 dates between September 8, 2025 and March 14, 2026 is summarized in the chart below:




53. As shown above, between September 8, 2025 and March 14, 2026, the Nike Air Max 2017's reference price was listed as $190. During this time, Nike did not sell black Nike Air Max 2017's for more than $171.97.

54. At its lowest price (without an "extra" promotion), consumers were led to believe that their "savings" amounted to $75 off; during promotional periods of "extra" savings, this perceived discount amounted to $82 in savings—perceived savings of nearly 50% off the reference price of $190.

55. Additional pricing data from 2025 suggests that the black Nike Air Max 2017's were continuously on sale between January 2025 and March 2026. This data suggests that black Nike Air Max 2017's may have been on sale ***for fourteen (14) months***.

56. Consumers who purchased black Nike Air Max 2017's from Nike between January 2025 and March 2026 reasonably relied on the advertised reference price and advertised "discount." These consumers were misled to believe that the advertised reference price was the prevailing market price of the product and that the discount they were receiving was a limited-time offer.

57. Nike's deceptive practices were not limited to Nike Air Max 2017's.

58. The Nike Gato (big kids' shoes) provide another example. Between September 11, 2025, and March 15, 2026, white-and-green Nike Gatos were advertised with a reference price of $100. Like the black Nike Air Max 2017's, white-and-green Nike Gatos were continuously "on sale" ***for six (6) months***.

59. Pricing data that was collected for white-and-green Nike Gatos from screenshots taken on 177 dates between September 11, 2025, and March 15, 2026, is summarized in the chart below:




60. As shown above, between September 12, 2025 and March 15, 2026, the Nike Gato's advertised reference price ("$100") never changed. During this time, Nike did not sell white-and-green Nike Gatos for more than $85.97.

61. At its lowest price (including when "extra" promotions applied), consumers were led to believe that their "savings" amounted to approximately $50 in savings—perceived savings of nearly 50% off the reference price of $100.




62. The same pattern emerges with the Nike Blazer Mid 77 SE D (big kids' shoes) ("Nike Blazer").

63. Between September 8, 2025 and March 15, 2026, the blue Nike Blazer's advertised reference price ("$95") never changed. During this time, Nike did not sell the Nike Blazer for more than $76.97.

64. Pricing data that was collected for blue Nike Blazers from screenshots taken on 178 dates between September 11, 2025 and March 15, 2026 is summarized in the chart below:




65. At its lowest price (including when "extra" promotions applied), consumers were led to believe that their "savings" amounted to approximately $48 in savings—yet another example of perceived savings amounting to nearly 50% off the advertised reference price.



66. Nike's deceptive practices permeated its other product lines and departments, including jackets and other attire.

67. Reasonable consumers interpret reference prices and sale prices to convey that a product was listed or sold on Nike's website or mobile app at that reference price in the recent past and for a substantial time, but the product is now being offered to the customer at a substantial discount.

68. Reasonable consumers expect that Nike's products are valued in the marketplace at their reference prices.

69. Reasonable consumers expect that they are receiving genuine bargains when they purchase Nike's items on sale.

## II. PLAINTIFFS FELL VICTIM TO NIKE'S DECEPTIVE PRICE SCHEME

***Plaintiff Corinne Pearson***

70. On April 26, 2025, Plaintiff Corinne Pearson used Nike's mobile app on her phone to shop for shoes. On that date, Ms. Pearson observed that the black Nike Killshot 2 Leather shoes were advertised as being on sale.

71. Upon information and belief, Ms. Pearson observed a crossed-out reference price of $90[8] and an advertised sale price of **$54.97** for black Nike Killshot 2 Leather shoes, which she believed to be an actual discount off the regular, prevailing market price of that product.

[8] In previous pleadings, Ms. Pearson relied on her online Nike purchase history to identify the reference price that she observed on April 26, 2025. Upon further investigation, Ms. Pearson discovered that Nike's online purchase history does not accurately display historic reference prices. Instead, Ms. Pearson's online purchase history displays the price she paid ($54.97) compared to the current reference price of Nike Killshot 2 Leather shoes ($100), not the historic reference price of $90 that was contemporaneously viewed by Ms. Pearson when she made her purchase in April 2025. Regardless of this discrepancy, Nike had not sold the Killshot 2 Leather shoes for more than $59 within 90 days of the date Ms. Pearson made her purchase.

72. At that time, Nike's website advertised that the black Nike Killshot 2 Leather shoes were on sale. Nike's website advertised a crossed-out reference price of $90 and an advertised sale price of **$54.97** (marketed as "**38% off**") for black Nike Killshot 2 Leather shoes.

73. Believing that she was receiving a special deal and saving at least $45 off the prevailing price, Ms. Pearson purchased black Nike Killshot 2 Leather shoes through the Nike App on April 26, 2025, for $54.97.

74. However, the listed reference price was fictitious, and the purported "savings" were not real.

75. Black Nike Killshot 2 Leather shoes had been "on sale" on Nike's website and app with an advertised reference price of at least $90 since at least January 19, 2025.

76. Upon information and belief, Nike had not sold its black Nike Killshot 2 Leather shoes for more than $59 in the 90 days immediately preceding Ms. Pearson's purchase.

77. Thus, at the time of Ms. Pearson's purchase, Nike had not sold its black Nike Killshot 2 Leather shoes for the advertised reference price of $90 in the 90 days immediately preceding her purchase.

78. As a result, the purported discount that Ms. Pearson and other Nike consumers received (i.e., "**38% off**" online) was grossly exaggerated and misleading.

79. Ms. Pearson reasonably relied on Nike's representations regarding the purported reference price, discount, and amount of her "savings." Nike's representations regarding these matters induced Ms. Pearson into purchasing black Nike Killshot 2 Leather shoes.

80. Ms. Pearson would not have purchased black Nike Killshot 2 Leather shoes—or would not have agreed to pay as much as she did—if she had known that the listed reference price and advertised discount were false.

81. Nike misrepresented the reference price and purported "savings" with the intent to induce Ms. Pearson and other consumers to purchase its products, to increase demand for its products, and to charge more for its products than would otherwise be possible.

82. Unfortunately, Nike's deceptive strategy was successful, and as a result of Nike's misrepresentations and false statements, Ms. Pearson and other consumers were tricked into purchasing Nike products and paid more for Nike products than they otherwise would have paid.

83. As stated above, Ms. Pearson would like to buy Nike products in the future but can no longer rely on the accuracy of Nike's represented pricing in deciding whether to make a purchase.

84. Without injunctive relief, Ms. Pearson cannot determine whether Nike's deceptive pricing scheme has been corrected.

85. Thus, although Ms. Pearson would like to purchase additional Nike products, she will not do so because she cannot trust and rely on Nike's advertising.

***Plaintiff Sharon Manier***

86. On January 30, 2026, Plaintiff Sharon Manier shopped for shoes on Nike's website, nike.com. On that date, Ms. Manier observed that the pink Nike Dunk Low shoes were advertised as being on sale.

87. Upon information and belief, Ms. Manier observed a crossed-out reference price of $125 and an advertised sale price of **$87.97** for the pink Nike Dunk Low shoes (marketed as "**29% off**"), which she believed to be an actual discount off the regular, prevailing market price of that product.

88. Believing that she was receiving a special deal and saving at least $37 off the prevailing price, Ms. Manier purchased pink Nike Dunk Low shoes through the Nike website on January 30, 2026, for $87.97.

89. However, the listed reference price was fictitious, and the purported

"savings" were not real.

90. Pink Nike Dunk Low shoes had been "on sale" on Nike's website with an advertised reference price of $125 since at least September 11, 2025.

91. Upon information and belief, Nike had not sold its pink Nike Dunk Low shoes for more than $109 in the 90 days immediately preceding Ms. Manier's purchase.

92. Thus, at the time of Ms. Manier's purchase, Nike had not sold its pink Nike Dunk Low shoes for the advertised reference price of $125 in the 90 days immediately preceding her purchase.

93. As a result, the purported discount that Ms. Manier and other Nike consumers received (i.e., "**29% off**" online) was grossly exaggerated and misleading.

94. Ms. Manier reasonably relied on Nike's representations regarding the purported reference price, discount, and amount of her "savings." Nike's representations regarding these matters induced Ms. Manier into purchasing pink Nike Dunk Low shoes.

95. Ms. Manier would not have purchased pink Nike Dunk Low shoes—or would not have agreed to pay as much as she did—if she had known that the listed reference price and advertised discount were false.

96. Nike misrepresented the reference price and purported "savings" with the intent to induce Ms. Manier and other consumers to purchase its products, to increase demand for its products, and to charge more for its products than would otherwise be possible.

97. Unfortunately, Nike's deceptive strategy was successful, and as a result of Nike's misrepresentations and false statements, Ms. Manier and other consumers were tricked into purchasing Nike products and paid more for Nike products than they otherwise would have paid.

98. As stated above, Ms. Manier would like to buy Nike products in the future but can no longer rely on the accuracy of Nike's represented pricing in deciding whether to make a purchase.

99. Without injunctive relief, Ms. Manier cannot determine whether Nike's deceptive pricing scheme has been corrected.

100. Thus, although Ms. Manier would like to purchase additional Nike products, she will not do so because she cannot trust and rely on Nike's advertising.

## CLASS ALLEGATIONS

101. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

102. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23.

103. Plaintiffs assert their claims on behalf of a Class defined below:[9]

> All persons in California who purchased a Nike product through Nike's website or Nike's mobile app at a discount from a higher advertised reference price on or after July 21, 2022, excluding Nike's officers, directors, and employees, as well as any judicial officer who presides over this action and members of the judicial officer's immediate family.

104. Plaintiffs and the members of the Class were subjected to Nike's deceptive practices described herein. Due to the extensive and pervasive nature of Nike's deceptive practices, it can reasonably be inferred that all members of the Class were subjected to these practices.

105. **Numerosity:** The members of the Class are so numerous that joinder is impractical. The Class is believed to consist of thousands of members, the precise number of which is only within the knowledge of Nike and can be ascertained from Nike's records.

---

[9] Plaintiffs reserve the right to amend this class definition or propose other or additional classes or subclasses in their motion for class certification or an amended pleading.

106. **Commonality**: There are numerous questions of law and fact common to the Class. Among the many questions of law and fact common to the Class are:

a. Whether Nike's conduct described herein was unfair;

b. Whether Nike's conduct described herein was unlawful;

c. Whether Nike's conduct described herein was fraudulent;

d. Whether Nike's conduct described herein was deceptive and/or misleading;

e. Whether Nike's conduct described herein violated the CLRA;

f. Whether Nike's conduct described herein violated the FAL;

g. Whether Nike's conduct described herein violated the UCL;

h. Whether Nike has been unjustly enriched by its conduct;

i. The proper measure of monetary relief; and

j. The proper form of any declaratory or injunctive relief.

107. **Typicality:** Plaintiffs' claims are typical of other Class members. Nike engaged in a systematic reference price scheme during the class period, and it was therefore typical for Nike to engage in the false and deceptive practices alleged herein. Plaintiffs were victimized by this this reference price scheme in a manner consistent with other Class members and have no interests antagonistic to the interests of the other Class members.

108. **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in complex class action litigation, including litigation involving consumer law.

109. This action is maintainable as a class action because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

110. This action is also maintainable as a class action because questions of law and fact common to the Class **predominate** over any questions affecting only individual members of the Class, and because a class action is **superior** to other available methods for the fair and efficient adjudication of this controversy. Nike's conduct as described herein stems from a common and uniform set of deceptive practices. Individual class members do not have an interest in pursuing individual actions against Nike, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Nike's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

111. Plaintiffs intend to send notice to all members of the Class to the extent required by Rule 23. The names and address of the Class members are readily available from Nike's business records.

## COUNT I
**Violation the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 et seq.**
**(asserted on behalf of the Class)**

112. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

113. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200.

114. Nike violated the UCL by engaging in the false reference price scheme and the acts and practices described herein in the course of its business.

115. Nike's acts and practices as described in this Complaint are unlawful, in that they violate (among other things):

a. each of the California statutes and other statutes set forth in this Complaint;
b. 16 C.F.R. § 233.1;
c. 15 U.S.C. § 45(a) and 52(a); and
d. common law.

116. Nike's acts and practices as described in this Complaint also are unfair. These acts and practices are:

a. inconsistent with the statutory and regulatory authority cited above;
b. contrary to clearly-articulated public policy;
c. immoral, unethical, oppressive, and unscrupulous; and
d. substantially injurious to consumers.

117. Nike knows that these acts and practices deceive consumers but systematically engages in these acts and practices anyway in order to gain unfair advantages and financial benefits in the marketplace. The harm caused by these unfair acts and practices vastly outweighs any legitimate utility they possibly could have.

118. Nike's acts and practices as described in this Complaint also are fraudulent. The reference prices and "% off" figures that Nike displays on its website and on its mobile app are fictitious, intended to deceive consumers into purchasing its products, and do deceive consumers into purchasing its products.

119. The reference prices and "% off" figures that Nike displays on its website and on its mobile app also constitute unfair, deceptive, untrue, and misleading advertising.

120. Plaintiffs and the Class have suffered an injury-in-fact and have lost money as a result of Nike's violations of the UCL. But for Nike's false advertising scheme and its unfair, unlawful, and fraudulent acts and practices, Plaintiffs and the

Class members would not have purchased a Nike product or would not have paid as much as they did for the product.

121. Nike's violations of the UCL are ongoing and present a continuing threat that members of the public will be deceived into purchasing products based on false reference prices and fictitious discounts and "savings," leading to further injury and financial damage to the Class and the public at large.

122. Pursuant to California Business and Professional Code §§ 17203-04, Plaintiffs and the Class are entitled to relief for Nike's violations of the UCL, including: (1) an order enjoining Nike from continuing to engage in the false reference-price scheme described herein; and (2) restitution.

123. In addition, Plaintiffs and the Class are entitled to recovery of their costs and reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable authority.

**COUNT II**
**Violation of the California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code § 17500 et seq.**
**(asserted on behalf of the Class)**

124. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

125. The FAL prohibits any "untrue or misleading" statement in advertising, including any statement made "over the Internet," which is known to be untrue or misleading, or which by the exercise of reasonable care should be known to be untrue or misleading. Cal. Bus. & Prof. Code § 17500.

126. The FAL further provides that it is unlawful to make "any such statement as part of a plan or scheme with the intent not to sell … property … so advertised at the price stated therein, or as so advertised." *Id.*

127. This law specifically prohibits the use of a reference price that does not reflect the actual prevailing market price for the advertised item:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price … at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501.

128. As described herein, Nike's false reference-price scheme involves untrue and misleading statements in advertising, which are made on its company internet site and its mobile app for the purpose of inducing potential customers to purchase its products.

129. Nike knows that the reference prices and "% off" discounts that it displays on its website and on its mobile app are untrue and misleading, or at the very least, Nike should know that they are untrue and misleading.

130. The reference prices displayed on Nike's website and on its mobile app are not prevailing market prices and were not prevailing market prices within three months of the date that they were advertised. To the contrary, these reference prices are fictitious prices that Nike uses to deceive consumers into believing they are receiving special "savings" when in fact they are not receiving any such savings (or at least not the savings advertised).

131. Nike's untrue and misleading statements as described herein have deceived Plaintiffs and the Class. Nike's untrue and misleading statements are likely to continue to deceive Plaintiffs, the Class, and other members of the public. But for

these untrue and misleading statements, Plaintiffs and the Class members would not have purchased a Nike product or would not have paid as much as they did for the product.

132. Pursuant to California Business and Professional Code § 17535, Plaintiffs and the Class are entitled to relief for Nike's violations of the FAL, including: (1) an order enjoining Nike from continuing to engage in the false advertising scheme described herein; and (2) restitution.

133. In addition, Plaintiffs and the Class are entitled to recovery of their costs and reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable authority.

## COUNT III
## Violation of the California Consumer Legal Remedies Act ("CLRA")
## Cal. Civil Code § 1750 *et seq.*
## (asserted on behalf of the Class)

134. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

135. The CLRA prohibits the use of "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions" in a "transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civil Code § 1770(a)(13).

136. Plaintiffs and the members of the Class are "consumers" as defined by California Civil Code § 1761(d).

137. The products purchased by Plaintiffs and the members of the Class were "goods" as defined by California Civil Code § 1761(a).

138. Nike's sales of merchandise to Plaintiffs and the other members of the Class were "transactions" as defined by California Civil Code § 1761(e).

139. Nike has violated the CLRA by making false and misleading statements in connection with transactions involving the sale of goods to Plaintiffs and other California consumers. As described herein, Nike regularly and pervasively advertises merchandise for sale on its website and on its mobile app with false and misleading reference prices and makes false and misleading statements concerning the existence and amounts of price reductions represented to consumers.

140. Nike willingly engaged in these practices and made these statements knowing them to be false or misleading.

141. Plaintiffs and the Class suffered injuries as a result of Nike's false and misleading statements in violation of the CLRA. But for these false and misleading statements, Plaintiffs and the Class members would not have purchased a Nike product or would not have paid as much as they did for the product.

142. Plaintiffs and the Class are also at risk of future injury because Nike's violations of the CLRA are ongoing. Plaintiffs and the Class members wish to buy additional Nike products. Because of Nike's past and present deceptive practices, Plaintiffs and the Class members cannot rely on Nike's reference prices. Although Plaintiffs and other Class members would like to purchase additional Nike products, they will not do so because they will be unable to tell whether Nike has ceased its deceptive practices.

143. Pursuant to California Civil Code § 1780, Plaintiffs and the Class members are entitled to injunctive relief for Nike's violations of the CLRA, including but not limited to (1) an order enjoining Nike from continuing to engage in the false reference price scheme described herein; (2) other appropriate relief as provided by this statute or applicable law, or as the Court deems proper.

144. On July 21, 2026, Ms. Pearson, through counsel, sent a CLRA demand letter to Defendant via certified mail (with return receipt requested) that provided notice of Defendant's violation of the CLRA and demanded Defendant correct, repair,

replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, Ms. Pearson would seek damages in accordance with the CLRA.

145. Defendant received Ms. Pearson's CLRA demand letter on July 24, 2026.

146. By August 25, 2026, Defendant had not responded to Ms. Pearson's letter or agreed to rectify the problems associated with the actions detailed above and given notice to all affected consumers. Pursuant to California Civil Code § 1782, Ms. Pearson amended this Complaint to seek actual, punitive, and statutory damages, as appropriate against Defendant.

147. Ms. Pearson's July 21, 2026 CLRA demand letter notified Defendant that the demand was made on behalf of herself and a proposed class.

148. Ms. Manier is a member of the proposed class that Ms. Pearson defined in her July 21, 2026 CLRA demand letter. Thus, Ms. Pearson's July 21, 2026 CLRA demand was also made on Ms. Manier's behalf.

## COUNT IV
**Unjust Enrichment (Quasi-Contract Claim for Restitution)**
**(plead in the alternative and asserted on behalf of the Class)**

149. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

150. Nike has been unjustly enriched as a result of the conduct described in this Complaint.

151. Nike received a benefit from Plaintiffs and other members of the Class in the form of payment for products purchased on Nike's website and on its mobile app.

152. Retention of these benefits by Nike would be unjust and inequitable because Nike received these benefits by engaging in a false, deceptive, and misleading

reference price scheme, and by engaging in the unlawful, unjust, and wrongful acts and practices described in this Complaint.

153. The benefits (or at least some portion the benefits) that Nike received were not legitimately earned and came at the expense of Plaintiffs and the other members of the Class.

154. Nike knows that its reference price scheme is unjust, inequitable, and wrongful, but systematically engages in this scheme anyway in order to gain unfair advantages and reap unearned financial benefits.

155. Nike is guilty of malice, oppression, and/or fraud through its willful and conscious disregard for the rights of Plaintiffs and members of the Class.

156. As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution and disgorgement of all amounts unjustly retained by Nike as well as other appropriate relief in an amount to be proved at trial.

## PRAYER FOR RELIEF

157. Wherefore, Plaintiffs Corinne Pearson and Sharon Manier, individually and on behalf of the Class, pray for the following relief:

a. Certification of the proposed Class pursuant to Rule of Civil Procedure 23;
b. Appointment of Plaintiffs as Class Representatives for the Class;
c. Appointment of Plaintiffs' counsel as Class Counsel;
d. A declaration that Nike violated each of the laws that form the basis for Plaintiffs' statutory claims, and that Nike was unjustly enriched by its conduct as described herein;
e. Actual, punitive, and statutory damages;
f. Restitution;

g. Disgorgement of all monies received by Nike as a result of the unlawful, unjust, unfair, and deceptive acts and practices described herein;

h. Penalties as provided by law;

i. A permanent injunction enjoining Nike from continuing the unlawful, unjust, unfair, and deceptive acts and practices described herein;

j. Pre-judgment and post-judgment interest;

k. Reasonable attorneys' fees and expenses; and

l. Such other further relief that the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

158. Plaintiffs and the Class demand a trial by jury.

Dated: October 15, 2026

**NICHOLS KASTER, PLLP**

*/s/ Patricia C. Dana*
Anna P. Prakash
MN Bar No. 0351362*
aprakash@nka.com
Brock J. Specht
MN Bar No. 0388343*
bspecht@nka.com
Patricia C. Dana
MN Bar No. 0400803*
pdana@nka.com
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878

**DON BIVENS, PLLC**
Maxwell K. Weiss
AZ Bar No. 041264*
max@donbivens.com
Scottsdale Quarter
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: 602-762-2661

**MANFRED, APC**
Manfred P. Muecke
CA State Bar No. 222893
4225 Executive Square
Suite 600-6051
La Jolla, CA 92037
Telephone: (619) 550-4005
Facsimile: (619) 550-4006
mmuecke@manfredapc.com

*admitted *pro hac vice*
ATTORNEYS FOR PLAINTIFFS